MORRIS BELOWSKY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 9656.   Promulgated June 18, 1927.

In each of the taxable years the petitioner filed an income-tax return which showed his correct income-tax liability for that year.

*T. Ellis Allison, Esq.,* for the petitioner.
*J. K. Moyer, Esq.,* for the respondent.

The Commissioner made the following determination in regard to the petitioner's income-tax liability for the following calendar years:

| Year | Deficiency in tax | Penalty |
|------|------:|------:|
| 1919 | $1,963.00 | $490.75 |
| 1920 | 538.00 | 134.50 |
| 1922 | 28.00 | 7.00 |
| Total | 2,529.00 | 632.25 |

The deficiency letter indicates that the penalty was assessed because the petitioner had not filed any returns for these years and the letter states that an investigation of the petitioner's books of account and records disclosed that he received income of $20,500 in 1919, $10,500 in 1920, and $8,500 in 1922.

The petitioner contests the correctness of any and every part of the deficiency and penalty. He alleges that he filed returns which correctly stated his income.

#### FINDINGS OF FACT.

The petitioner is an individual residing at 605 Sixth Street, Brooklyn, N. Y. He can neither read nor write any English, except his signature.

Petitioner came to this country from Russia in 1904 and purchased a grocery store in Brooklyn. Six months later his wife came with the proceeds of the sale of their property in Russia. She kept this money as her own and added to it from time to time. In 1908, the petitioner sold his grocery store and moved to a newly purchased

farm in Connecticut. In 1912, he sold the farm, returned to Brooklyn with about $7,500 in cash and mortgages, and purchased another grocery business for $2,500. He conducted this business in a rented store room. The sales from this store were made mostly to ships and barges. Stock consisted of canned and dried goods suitable for the ship trade, but not much in demand by resident trade. He carried stock worth about $8,000.

This grocery business was successful until in the year 1919, when sales fell off due to the fact that there were fewer ships and barges in the vicinity. The petitioner then ceased to purchase new stock, closed out his old stock, tried to collect his accounts, sold his store fixtures at auction for $2,500 in August, 1920, and went out of business. He did not again engage in business during the taxable years.

In October, 1919, the petitioner, in partnership with a man named Hanford, bought an apartment house in Montrose Extension, Brooklyn, N. Y. The total purchase price was $75,000, of which $58,000, was represented by mortgages. For a while Hanford collected the rents, gave the petitioner his share and then collected from the petitioner his share of all expenses.

After four or five months the petitioner purchased Hanford's share in this property. This building accommodated 40 tenants. The gross income from it amounted to about $12,000 a year. Taxes on it amounted to $1,700 a year.

In October, 1920, he purchased his residence at 605 Sixth Street, Brooklyn. He paid $7,000 in cash and executed mortgages for $10,000. He owns no other real estate. His wife owns an interest in a property on Third Avenue, Brooklyn. She paid $5,000 or $6,000 for her share in 1916. During the taxable years she received about $1,200 net income from this property. The gross rents amounted to about $7,250 a year.

During 1920, the petitioner's property consisted of the Montrose property, two automobiles, $2,000 in the State Bank, $500 in Liberty bonds, $300 in War savings stamps, and his residence.

He kept no books or records, except his bank account in the State Bank. While in business he cashed many checks for customers. He loaned money to different people and at times borrowed money. Frequently people gave him money for safe keeping. In every such instance he deposited the cash and gave his check for the amount. His brother-in-law sometimes gave him as much as $1,000 in this way. An Italian woman also gave him substantial sums for safe keeping. The proceeds from sales of groceries were deposited in this account.

During all of the taxable years he lived with his wife and supported his 7 daughters. The latter were all under 18 years of

age during all 3 years, except that the oldest reached 18 before the end of the year 1922.

On or about March 8, 1920, the petitioner went to the second floor of the post office at Brooklyn, to make his income-tax return for 1919. He got in line and finally came to a man who asked him questions in regard to his business and his income. He answered these questions to the best of his ability and the man wrote as he answered. The man then gave him a paper on which the former had been writing. It was a work sheet of Form 1040-A "For individual income tax return for net incomes of not more than $5,000 for calendar year 1919." Omitting blank spaces it showed the following entries and answers in ink:

WORK SHEET FOR INDIVIDUAL INCOME TAX RETURN (1919)

Page 1.

Name, Morris Belowsky.

Street and number, 823 Third Ave., Brooklyn.

1. Did you make a return for 1918? Yes.

3. To what collector's office was it sent? Brooklyn Post Office Bldg.

4. Were you married and living with wife Dec. 31, 1919? Yes.

6. How many dependent persons under 18 (or mentally or physically defective) were receiving their chief support from you on Dec. 31, 1919? 7 children.

8. Did you pay during the calendar year to any individual rent, wages, salaries or other fixed or determinable income amounting to $1,000 or over? Yes. Rent of $1,080 for store to Mr. Spiro, same address.

9. Did your wife or minor child make a separate return? No.

10. Did you, your wife or minor children receive any interest on U. S. Liberty Bonds or any other income not reported elsewhere in this return or in a separate return? No.

12. Enter in this table details concerning repairs, wear and tear, and property losses, claimed as deductions in Schedules A, E and I on page 2 of return (see instructions): If property was acquired prior to March 1, 1913, attach statement explaining how value as of that date was determined.

| 1. Refer to "A," "E" or "I" | 2. Kind of property (if buildings, state also material of which constructed) | 3. Date acquired | 4. Cost or market value 3/1/13, if acquired prior thereto | 5. Repairs ordinary and incidental |
|---|---|---|---|---|
| | Auto truck_____ | 1918 | _____ | $500 |

*Calculation of tax*

| | | |
|---|---|---|
| M. | Net income shown on page 2, Item J_____ | $3,940.00 |
| N. | Less personal exemption (See Instruction VII)_____ | 3,400.00 |
| O. | Balance (income taxable at 4%)_____ | 540.00 |
| P. | Tax due (4% on amount of Item O)_____ | 21.60 |
| Q. | Less normal tax of 2% on amount of Item F_____ | |
| R. | Balance of tax due_____ | |
| S. | Amount of tax paid on submission of return_____ | $21.60 |

Page 2.

A. Income from business or profession:

1. Kind of business, Retail Grocer.
2. Business address, 823 Third Ave., Brooklyn.
3. Total sales and income from business or professional services_____ $48,000

Cost of goods sold—
4. Labor_____ $1,560.00
5. Material & supplies_____
6. Merchandise bought for sale_____ 39,840.00
7. Other costs_____
8. Plus inventories at beginning of year_____

9. Total_____ $41,400.00
10. Less inventories at end of year_____
11. Net Cost of Goods Sold_____

Other business deductions:
12. Salaries and wages not reported as "Labor" under "Cost of Goods sold"_____
13. Rent on business property in which taxpayer has no equity_____ $1,260.00
14. Interest on business indebtedness to others_____
15. Taxes on business and business property_____
16. Repairs, wear and tear, and property losses (for auto)_____ 500.00
17. Bad debts arising from sales or professional services_____ 305.00
18. Other expenses (attach classified statement) Electricity & Insurance & Telephone_____ 595.00

19. Total (Items 12 to 18 inclusive)_____ $2,660.00
20. Net Cost Plus Total Deductions (Item 11 plus Item 19)_____ 44,060

21. Net Income from Business or Profession (Item 3 minus Item 20)_____ $3,940

He then paid the tax of $21.60 and received a mimeographed paper of which the following is a copy:

| Form 1107 U. S. Internal Revenue | TAXPAYER'S RECEIPT FOR INCOME AND PROFITS TAX FOR 1919 |
| --- | --- |
| | OFFICE COLLECTOR INTERNAL REVENUE |
| NOTICE TO TAXPAYER | Form No. of return, 1040 A    Tax, $21.60 |
| | Name, Morris Belowsky |
| Before presenting payment to cashier enter on this form | (Stamped |
| (a) Name | Address, 823 3rd Ave.,    PAID |
| (b) Address | Brooklyn, N. Y.    1  Mar 8 |
| (c) Form number of return | 9    HH |
| (d) Amount of tax paid | 2  1st Dist. |
| | 0  N. Y. |

At about the same time the next year he returned to the same place and in the same way received a work sheet Form 1040-A "Individual Income Tax Return for Net Incomes of Not More than $5,000 or Joint Return of Husband and Wife if Combined Net

Income Does Not Exceed $5,000 for Calendar Year 1920." Omitting the blank spaces it showed the following entries and answers:

INDIVIDUAL INCOME TAX RETURN FOR CALENDAR YEAR 1920

Name, Morris Belovsky

Street and number, 605 6th St., Brooklyn, Kings County, N. Y.

1. Are you a citizen of the United States? Yes.
2. If not, are you a resident of the United States? Yes.
4. Did you file a return for 1919? Yes.
5. If so, what address did you give on that return? 823 Third Ave., Brooklyn.
6. To what Collector's office was it sent? Brooklyn.
7. Were you married and living with wife on the last day of your taxable period? Yes.
9. How many dependent persons under 18 (or if 18 or over, incapable of self-support because mentally or physically defective) were receiving their chief support from you on the last day of your taxable period? ·7.
10. Was a separate return filed by your wife? No.
11. Write "R" if you kept no books, or books on a cash basis; or "A" if you kept books on an accrual basis. R. A.
14. Net loss (from page 2, Schedule L) _ _ _ _ :_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ $2, 896. 00
15. Less personal exemption_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ 3, 400. 00
16. Balance (income taxable at 4%)_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _

Enter in this table details concerning repairs, wear and tear, property losses, etc., claimed as deductions in schedules A, E, and I, on page 2 of return.

| 1. Refer to "A," "E" or "I" | 2. Kind of property (if buildings, state also material of which constructed) | 3. Date acquired | 4. Age when acquired | 5. Cost, or if acquired prior to 3/1/13, the fair market value on that date | 6. Repairs, ordinary and incidental |
|---|---|---|---|---|---|
| E_ _ _ _ _ _ _ _ _ _ _ _ | Brick 6 story tenement house_ _ _ _ _ _ _ _ _ _ | Oct. 1919 | 7 | $75,000 | $1,070 |

Schedule A. Income from Business or Profession:

1. Kind of business, Retail Grocer.
2. Business address, 823 Third Ave., Brooklyn.
3. Total sales and income from business or professional services—
    During 8 months and sold in auction _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ $12, 850

Cost of goods sold:
4. Labor_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _
5. Material and supplies_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ $160. 00
6. Merchandise bought for sale_ _ _ _ _ _ _ _ _ _ _ _ _ 15, 000. 00
7. Other costs_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _
8. Plus inventory, etc_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _
9.     Total_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ $15, 160. 00

Other business deductions:
12. Salaries and wages not reported as "Labor" under "Cost of Goods Sold"_ _ _ _ _ _ _ _ _ _ _ _ _ _ 846. 00
13. Rent on business property in which taxpayer has no equity_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ 840. 00
14. Interest on business indebtedness to others_ _ _ _ _ _ _ _ _ _ _ _
15. Taxes on business and business property_ _ _ _ _ 27. 00
16. Repairs, wear and tear, obsolescence, depletion, and property losses_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _
17. Bad debts arising from sales or professional services_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ 600. 00
18. Other expenses (list principal items and amounts at foot of page) _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ 355. 00
19.     Total (Items 12 to 18, inclusive)_ _ _ _ _ _ _ _ $2, 668. 00
20.     Net Cost Plus Total Deductions (Item 11 plus Item 19)_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ 17, 828
21. Net Income from Business or Profession (Item 3 minus Item 20)_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ (Loss) $4, 978

Schedule E. Income from Rents and Royalties:

| 1. Kind of Prop.erty | 2. Name and address of tenant, lessee, etc. | 3. Amt. received | 4. Repairs, etc. | 5. Other expenses |
|---|---|---|---|---|
| 6 story tenem_____ | Tenants at 11-15 New Montrose Ave., Brooklyn_ | $11,760.00 | $1,070.00 | $8,608 |

Net Income from Rents and Royalties (total of column 3 minus total
   of columns 4 and 5) _____ $2,082
Schedule H. Total Net Income from Above Sources.  (Total net income
   less total deficits, shown in above Schedules)_____ (Loss)  $2,896
Explanation of Deductions claimed in Schedule A, Items 7 and 18; Schedule
   B, Column 5; Schedule E, column 5; Schedule I, Item 4; and Schedule K.
   E-5 Ins. 546.; % on 1st and 2nd mort. loan 4080; Tax 1877; fuel and electr
1005; Janitor 1000; small expense 100.
   A-18 fuel & elect 120; phone 64; Ins. 40; carfare & post. 96; tips etc. 35.

He paid no tax at that time but later he was notified to and did
appear at the post office, was again interrogated, and was told that,
as he had used groceries from the store to supply his family, he owed
additional tax of $40.  A blank check was produced, and filled out
and he signed it.  The following is a copy of that check with its en-
dorsement:

MAY 11, 1921.

STATE BANK

Williamsburg Branch   Graham Av. & Vaset St. Bklyn.

Pay to the order of Collector of Internal Revenue Forty and No/_____Dollars
(signed)     MORRIS BELOWSKY

$40.00                    (Perforated " Paid 5-14-21 ")

Endorsed: Pay to the Order of Federal Reserve Bank of N. Y.  Income and
Excess Profits Tax Account.  This check is in payment of an obligation of the
United States and must be paid.  NO PROTEST.  T  May 13 192
BERTRAM GARDNER<br>
<i>Collector of Internal Revenue First District of New York.</i>
Pay to the Order of Any Bank, Banker or Trust Co.
Prior endorsements guaranteed.
FEDERAL RESERVE BANK OF N. Y.<br>
L. H. HENDRICKS, <i>Cashier.</i>

Also stamped on back—

Received Payment through the New York Clearing House.
Prior Endorsements guaranteed.
May 14 1921 1 xxx
FEDERAL RESERVE BANK OF NEW YORK  E<br>
L. H. HENDRICKS, <i>Comptroller of Collections.</i>

In 1923, he had an accountant make up his return for 1922.  This
return was signed and sworn to and was mailed to the Collector of
Internal Revenue, Custom House, New York City, prior to March
15, 1923.  The accountant retained a copy which shows on a joint re-
turn a net income of $2,962 before the deduction of personal exemp-
tion and credit for dependents, and no tax due after deducting $3,200
for these two items.

MURDOCK: This case presents two questions of fact in relation to each of the three years involved. The first is, Was a return filed for the year by the petitioner?; the second, What was the petitioner's taxable income for the year?

Without any hesitation we decide the first question in the affirmative. The petitioner and an accountant both testified that a return for 1922 was filed before March 15, 1923. The petitioner alone testified that he filed a return for 1920 and offered the work sheet in evidence to corroborate his statement. If the evidence in regard to these two years stood alone we might have some doubt about it. But it does not stand alone. The proof in regard to the filing of a return for 1919 is so convincing that it lends credence to the evidence relating to the other two years. The petitioner testified that he filed a return for 1919, and again he produced the corroborating work sheet, but as to this year he also produced a tax receipt stamped " paid " with the stamp of the collector. The respondent offered no evidence in the case, but has made the same determination in regard to each year. Clearly he was in error as to the failure to file a return for 1919 and under all of the evidence we hold that each of the penalties was erroneously assessed.

The evidence is not so satisfactory in regard to the correct taxable income for these three years. The petitioner had no books of account or records, except his bank account. The latter was no criterion of his income. Yet the deficiency letter states that an examination of his books of account and records disclosed income of $20,500 for 1919, $10,500 for 1920, and of $8,500 for 1922. We are satisfied that the Commissioner's determination of the petitioner's income-tax liability for each of these years was incorrect, but before we can cast aside that determination we must be shown something better to tie to.

The only other available figures in this case are the taxable incomes for 1919 and 1920, as disclosed by the work sheets, and for 1922 as shown on the accountant's copy of the 1922 return. The work sheets were made while the matters recorded thereon were fresh in the petitioner's mind. They were made by an agent of the respondent as the petitioner replied to his questions. We think that he then knew about what his true expense and income items were and that he correctly stated them. Considering the circumstances surrounding the origin of these figures and testing them in connection with all of the testimony and the reasonableness or unreasonableness of the entire situation we are inclined to believe that the income as disclosed by these sheets represented approximately this petitioner's taxable income for the respective years.

We are mindful of the fact that in 1919 there were fewer ships and barges to give this petitioner their trade, that consequently he allowed his stock to be depleted and in the latter half of 1920 he closed his store. He testifies that his average weekly sales from this store during his good years did not run over $700, which would make yearly gross sales of $36,400. The 1919 sheet shows gross sales of $48,000. Applying the respondent's average percentage table to the latter amount of gross sales, merely as a text, we get a probable net income from the grocery business of $1,900.80, whereas the work sheet shows a net profit from this source of $3,940.

The apartment on Montrose Avenue brought in gross yearly rentals of about $12,000. During 1919 the petitioner owned a one-half interest only. The purchase price was $75,000. There were mortgages against this property drawing interest on $58,000. Taxes were $1,700 a year. There were many other expenses to be paid before a net income was realized from the gross rents. Depreciation at a minimum rate would reach a substantial amount.

During 1920, this building was the chief source of the petitioner's income. He then owned the entire equity in it. In addition to the taxes, interest and expenses of this building he had to pay other taxes and interest as indicated in our findings of fact. His personal exemption and credits amounted to at least $3,400 in each of these years and in 1922, they amounted to at least $4,400. His wife received about $1,200 rent from her Third Avenue property which does not appear on either the 1919 or 1920 sheets and there are certain other inconsistencies between the sheets and the testimony. Nevertheless, if we use the proven expenditures and minimum amounts where we have no proof of the proper expenditures or deductions, we find that our results are within the amount of net taxable income as shown by the sheets. Therefore, we hold that this petitioner has no unpaid income tax liability for the three years here in question.

*Judgment will be entered for the petitioner.*